## UNITED STATES v. 75 CASES, MORE OR LESS, EACH CONTAINING 24 JARS OF PEANUT BUTTER, etc.

Nos. 2084, 2092, 2101, and Two Removed Cases from Eastern District of North Carolina.

District Court, D. Maryland.

Feb. 2, 1944.

Carl Ross McKenrick, Asst. U. S. Atty., of Baltimore, Md., for plaintiff.

J. Charles Fagan, of Baltimore, Md., and Raymond M. Hudson, of Washington, D. C., for defendants.

COLEMAN, District Judge.

This suit involves four consolidated libel proceedings under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. §§ 301–392, brought because of alleged adulteration of certain shipments of peanut butter.

The motion of claimant to impound certain evidence and documents, to return the seized merchandise, and to quash and dismiss the libels, to which the Government has filed exceptions, must be granted for the following reasons.

There are two questions in the case presented by the motion: first, whether the Government inspector acted within his authority and according to the requirements of the Act, as respects the inspection of claimant's plant on the dates in question; and, second, whether this same inspector likewise acted in accordance with the law in obtaining access to, and copying data from interstate shipping records of the claimant which form the basis for these proceedings.

On the first question, I must rule in favor of the Government. Section 374 of the Act provides for very broad inspection of the factory itself, "and all pertinent equipment, finished and unfinished materials, containers, and labeling therein," after first requesting and obtaining permission of the owner, operator or custodian of the factory to make such inspection. I find from the weight of the credible evidence that permission to do this was fully and freely given by claimant in the present case; that it is reasonable to assume that the results of such inspection might, without more, have led the Government to insist upon improvement within the plant, and that claimant might have inferred that such was a probable purpose implied in the inspection. Also, equally full permission was given to the inspector to take photographs in the plant, etc. Therefore, in doing so, the inspector did not go counter to the requirements of the law.

On the second point, however, I feel that, while the case may be said to be a border-

line one, the somewhat peculiar facts require the court to rule in favor of the claimant.

Section 373 of the Act sets out, meticulously, the method by which records of interstate shipments shall be obtained "for the purpose of enforcing" the Act's provisions, which is that access to such records shall be afforded by the carrier upon the request of an officer or employee duly designated by the Administrator under the Act. That provision does not mean that the records may never be obtained in some other manner, i. e., direct from the shipper if he freely consents to disclose them, but I think it does mean that if the Government sees fit to bypass the prescribed method, then it must be very careful to make full disclosure to the factory owner as to the purpose in asking for the records. Clearly, the use of the words "all pertinent equipment" in Section 374 was not intended to include, for example, a firm's books of account or financial statements. A fortiori, it was not intended to include data of a firm's shipments, especially since the Section of the Act just preceding (Section 373) specifically provides how such data shall be obtained by the Government.

In the present case, I find from the weight of the credible evidence that there was no such full and complete disclosure by the Government as it was required to make. It is true the president of the company testified,—and I think his testimony is characterized by complete frankness, as also is that of the Government inspector,—that he gave permission to the inspector to look at the records, but there is no evidence of any conversation on any occasion, or any discussion between the inspector and the president of the company or any one else connected with the company, as to the precise use to which disclosure of the records would be put. Yet the information so obtained was made the basis of these proceedings, and is the only basis for them. That smacks of surprise, if not of actual misrepresentation, and I do not think that is a permissible way for the Government to proceed. It should follow the strict provisions of the law. It should not so combine a factory inspection with an examination of the records as might,—and as, I find in the present case, did, in fact—mislead the factory owner or operator as to just what use the Government intended to make of the shipping data gleaned from these records. Possible damage to claimant's business reputation was likely to be involved in stoppage and seizure of its shipments in interstate movement,—far more damage than would normally be contemplated by imposing added sanitary requirements for manufacture of the product so shipped.

To summarize: I do not base the granting of the motion in this case upon a violation of the Fourth Amendment. The Government is correct in saying that the Amendment is not a basis for relief in a civil suit of this kind. See United States v. 935 Cases, More or Less, etc., 6 Cir., 136 F.2d 523, and cases therein cited. I rest my decision upon what I believe to be the proper interpretation of the Act as applied to the particular facts as I find them from the weight of the credible evidence.

For aught that appears, this proceeding might have been avoided, and the public interest equally well, and no doubt much more speedily served, if there had been a more complete, frank disclosure at the time to the president of the company as to just what was intended to follow the examination of the records. That is to say, he might have agreed to recall any alleged adulterated shipments. It is true the inspector who examined the records was acting under direction of his superior, and it is not to be assumed that he had any ill-will or intention to misrepresent the situation. Yet, for aught that appears, there is reasonable ground to believe that the Government's position was misrepresented; and, in any event, since the Act says that investigators, for the purpose of starting libel proceedings based upon interstate shipments, shall have access to records in a certain way, they should either proceed accordingly, or should make complete disclosure to the factory owner or operator and be sure that his consent to examination of his records is not due in any respect to a failure to understand the full use to which the records might be put.

For the reasons given, I will sign an order granting the motion to impound and to return the evidence taken from the records of the claimant, which means a dismissal of the present proceeding, because it is based on information which I rule was improperly obtained. However, the shipments will be ordered to remain in the Marshal's custody for a period of fifteen days, pursuant to the Government's request, pending a determination by it as to whether or not to take an appeal.

I should add that my conclusion should not in any way hamper the Government or give any solace to the claimant if it be a fact that claimant has violated the law, because the Government still has a right to obtain from the carriers the records of interstate shipments; to bring new libel proceedings, or, in lieu of that, on the basis of what evidence they may already have from other sources, to bring, if they see fit to do so, an equity proceeding for the purpose of having further shipment in interstate commerce by the claimant restrained.