UNITED STATES v. 75 CASES, MORE OR LESS, EACH CONTAINING 24 JARS OF PEANUT BUTTER, LABELED IN PART (JARS): "TOP NOTCH BRAND", et al.

No. 5254.

Circuit Court of Appeals, Fourth Circuit.

Dec. 27, 1944.

C. Ross McKenrick, Asst. U. S. Atty., of Baltimore, Md. (Bernard J. Flynn, U. S. Atty., of Baltimore, Md., Vincent A. Kleinfeld, Sp. Asst. to Atty. Gen., and Alvin M. Loverud, Atty., Federal Security Agency, of Washington, D. C., on the brief), for appellant.

Raymond M. Hudson, of Washington, D. C., and J. Charles Fagan, of Baltimore, Md., for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from an order and judgment of the District Court impounding certain evidence and documents, and dismissing five libels for condemnation, consolidated for trial, brought pursuant to the

provisions of the Federal Food, Drug, and Cosmetic Act, June 25, 1938, c. 675, 52 Stat. 1040, 21 U.S.C.A. § 301 et seq., hereinafter called the Act. The evidence and documents were impounded, and the Government prohibited from using them and any information obtained therefrom, on the assumption that the evidence, documents and information were obtained by a government representative wrongfully and in violation of certain provisions of the Act. The opinion of the District Court is reported in 54 F.Supp. 641.

The Old Dominion Peanut Corporation (hereinafter referred to as claimant) is a corporation with its place of business in Norfolk, Virginia, engaged in manufacturing peanut butter and peanut candies. On or about October 15, 1943, one Rankin, an inspector for the Food and Drug Administration, went to claimant's plant for the purpose of making an inspection of the factory, under authority of Section 374 of the Act. He saw Stubbs, claimant's president, and revealed the purpose of his visit. Stubbs made no objection. An inspection of the factory was made and Rankin found rodent pellets and refuse in and around the food products. Chapman, claimant's plant superintendent, secured containers for Rankin and samples of the food products were taken.

After the completion of the factory inspection, Rankin asked to see the company invoices for the purpose of ascertaining where shipments of these food products were being made. Mizzell, the claimant's sales manager, produced the invoices for Rankin's inspection. No objection whatever was made by either Stubbs or Mizzell.

Subsequently, on November 1, 1943, Rankin returned to claimant's plant for another inspection. Stubbs gave Rankin permission to make the inspection and take photographs of insanitary conditions. The inspection again showed the presence of rodent pellets and refuse. Rankin photographed and took as evidence a dead mouse found in the candy manufacturing room. Rankin testified that he informed Worsham, claimant's secretary-treasurer, of the insanitary conditions and advised him that legal proceedings might result. Rankin again asked for permission to inspect claimant's invoices and this permission was once more granted, without objection. He made notations of claimant's interstate shipments. Later certain shipments of these food products were seized and, on analysis showing the presence of filth in the food products, the instant libels for condemnation were brought.

The District Court found, and we agree with this finding, that permission to inspect the factory was fully and freely given. Further findings were made to the effect that permission was given to Rankin to inspect the claimant's invoices; but the District Court held that this permission was secured by a method that "smacks of surprise, if not of actual misrepresentation." This finding was predicated on the Court's interpretation of the requirements of Section 373 of the Act, and was, we think, clearly erroneous. Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A. following section 723c.

Section 373 of the Act provides as follows: "For the purpose of enforcing the provisions of this chapter, carriers engaged in interstate commerce, and persons receiving food, drugs, devices, or cosmetics in interstate commerce or holding such articles so received, shall, upon the request of an officer or employee duly designated by the Administrator, permit such officer or employee, at reasonable times, to have access to and to copy all records showing the movement in interstate commerce of any food, drug, device, or cosmetic, or the holding thereof during or after such movement, and the quantity, shipper, and consignee thereof; and it shall be unlawful for any such carrier or person to fail to permit such access to and copying of any such record so requested when such request is accompanied by a statement in writing specifying the nature or kind of food, drug, device, or cosmetic to which such request relates."

The Court below has taken the position, that since Section 373 "meticulously" sets out the method by which information as to interstate shipments is to be obtained, should the Government choose to avail itself of any other method, it must make a full and complete disclosure to the claimant and make sure that claimant's consent is not due in any respect to a failure to understand the fullest use to which the records might be put by the Government.

While we agree that in no case should the Government be permitted to use fraudulent methods in obtaining evidence, we think that the District Court has here

placed in unduly narrow construction on this statute. No such interpretation is warranted, either by the words of the Act, by its purpose, or by its legislative history.

■ Section 373 was enacted to provide a compulsory method by which information of interstate shipments, necessary to the enforcement of the Act, might be obtained from carriers. The need for such a method is obvious since interstate transportation is, in large part, done by common carriers. The lack of such a provision had proved a definite handicap to the enforcement of the Act. H.R. Report No. 2139—75th Cong. 3rd Session. But this section does not require that investigation must be limited to the records of the classes of persons therein enumerated. Nothing in the legislative history of the Act indicates any such intent on the part of Congress.

Claimant contends here, as it did below, that since the Act provides that the records of carriers and receivers may be examined, this excludes the examination of the claimant's records. We agree with the District Court that the prescribing of certain compulsory methods of investigation does not exclude permissive investigation. The affidavit filed by Stubbs clearly shows the unfortunate result which would follow from a contrary view. The affiant there states that one of the interstate shipments involved was moved by the purchaser in his own truck. Such an instance reveals the difficulties confronted by those administering the Act, should permissive examination of the shipper's records be denied. In such cases there would be no common carrier's records to be examined. Such a view would clearly not be in conformity with the purposes of the Act.

■ We need not consider the question of claimant's rights had it refused to allow Rankin's inspection of its invoices. The District Court found that such permission was given. We think that claimant has no grounds for contending, nor the District Court for finding, that claimant was really misled. Claimant's officers well knew, or must have known, that, should the plant inspection justify the sampling of products shipped in interstate commerce, this would be done. Further, Stubbs admitted that he was "generally" familiar with the Act, and in the light of his experience he must have been aware, at least

such knowledge is legally imputable to him, that should the sampling disclose filth, the products would certainly be subject to condemnation. This is the obvious and only practical inference to be drawn from these facts.

■ In connection with Section 373 of the Act, there is no ground for the application of the maxim expressio unius est exclusio alterius. We interpret this section, rather as affording a cumulative procedure to the Government, without restricting other avenues of information. Nor are we impressed by the statement of claimant's president (who, without any remonstrance or protest, gave Rankin free access to the invoices) that he would not have granted this access if he had not thought Rankin had a legal right to such access or if he had known that the information thereby gleaned might be used in subsequent libel proceedings. Permission to inspect the invoices was still voluntary and the Government was free to use this information in the proceedings for libel. See Joong Sui Noon v. United States, 8 Cir., 76 F.2d 249, 251.

■■ We are not here dealing with a criminal proceeding within the 4th Amendment to the Constitution. United States v. 935 Cases, etc., 6 Cir., 1943, 136 F.2d 523, certiorari denied, Ladoga Canning Co. v. United States, 320 U.S. 778, 64 S.Ct. 92. These libels for condemnation are proceedings in rem, and we agree with the Court below that there has been no violation of the "search and seizure" clause of the 4th Amendment. United States v. 935 Cases etc., supra. Public interest demands such a construction as will further the purposes of the Act. United States v. Research Laboratories, 9 Cir., 126 F.2d 42, certiorari denied, 317 U.S. 656, 63 S.Ct. 54, 87 L.Ed. 528.

■ Claimant relies on Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, in support of its contentions. Several factors impel the view that the Boyd case has no application here. That case involved an unconstitutional demand for the production of records in a criminal proceeding. If the records were not produced (in the Boyd case) the allegations were to stand as admitted. No such question arises here. By a specific proviso in Section 373 of the Act such information received may not be used in a criminal prosecution of

the person giving the information. Nor was the plate glass involved in the Boyd case an outlaw of interstate commerce. It was subject to forfeit only because of the illegal acts of its owner. Under the Act, condemned goods are subject to seizure and destruction irrespective of the intent of the manufacturer. United States v. Buffalo Pharmacal Co., 2 Cir., 1942, 131 F.2d 500.

Claimant further contends that it was improper for the inspector to combine a factory inspection and an examination of the claimant's invoices. It can hardly be assumed that the activities of the Food and Drug Administration are of a pigeon-hole nature which demand canalized separation. The Administration operates as a unit in furtherance of its primary purpose—the protection of the public. It is not unreasonable to assume that packaged food in which filth is found will be sold by the producer. Further, not only is it commensurate with the purpose of the Act to ascertain the interstate destination of the food in order to sample it for filth, should the factory inspection justify such action; but any other procedure would tend to frustrate the entire purpose of the Act. There was nothing wrongful in either the method of obtaining the information, or in the use of the information voluntarily granted. Joong Sui Noon v. United States, supra.

There is no legal merit in the contention that the Administration must use other and more expensive and time consuming methods of investigation instead of using information voluntarily given. Nor do we find approval for claimant's position that had Rankin not received the information from its invoices, there would have been no means of tracing the adulterated food shipped in the purchaser's truck. The Administration is not indulging in a game of "hide and seek". Its efforts are expended in the protection of the public.

Finally claimant contends that the taking of samples by Rankin was illegal. This, we think, is also without merit. Section 372(b) of the Act clearly contemplates the taking of samples.

The judgment of the District Court is reversed and the cause is remanded to that Court for further proceedings consistent with this opinion.

Reversed and remanded.