## UNITED STATES v. POLLACK.
### No. 2829c.

District Court, D. New Jersey.
Feb. 21, 1946.

B. Thorn Lord, U. S. Atty., of Newark, N. J., for the United States.

Joseph Tomaselli, of Camden, N. J., for defendant.

FORMAN, District Judge.

On October 3, 1944, an investigator of the Office of Price Administration appeared before a United States Commissioner and applied for a warrant to search the dwelling of Charles Pollack, the defendant, at 104 South Sussex Street, in the City of Gloucester, Camden County, N. J. In his affidavit he stated that the facts tending to establish the grounds of his application and his probable cause for believing that such facts existed, were as follows: "Charles Pollack who occupied premises listed above transferred counterfeit gasoline ration coupons on the said premises on September 29, 1944 and is to make a transfer of gasoline ration coupons tonight at his premises between 8:00 and 8:30 p. m."

He also produced before the commissioner an informer who had made an affidavit describing in detail a transaction with the defendant in which he had purchased gasoline ration stamps from the defendant, at his home, on September 29, 1944. This affidavit was subscribed before the investigator on September 30, 1944. Another affidavit was made by the informer in which he described telephonic arrangements he had made with the defendant on October 2, 1944, to consummate another and larger purchase of ration stamps and coupons at the home of the defendant between eight and eight-thirty of the evening of October 3, 1944. This affidavit was likewise subscribed before the investigator on October 3, 1944. The informant and the two affidavits were presented to the United States Commissioner who inquired of the informer whether the affidavits were true. The informer replied affirmatively. He was not sworn by the commissioner. In issuing the warrant the commissioner recited that it was based upon the affidavit of the investigator.

There was also issued a warrant for the arrest of the defendant based upon a complaint by the same investigator that he had on September 29, 1944, violated the "Second

War Powers Act of 1942, Section 1394.8178 (c) and of Ration Order 5C of the United States" by transferring knowingly, unlawfully and willfully counterfeit ration coupons to an unnamed person.

Arrangements were then made by the investigator to have the informer in the house at the appointed time. It was also arranged that a raiding party consisting of the investigator, three similar government agents, and two deputy United States Marshals, armed with the search warrant as well as the warrant for the arrest of the defendant, should enter the house at a time sufficiently subsequent to the informer's entry to give him opportunity to completely consummate the transaction with the defendant.

At the appointed time a Deputy United States Marshal rang the bell of the house. It was answered by the defendant's wife. The deputy marshal asked for the defendant and Mrs. Pollack inquired who he was. He replied that they would discuss that later, and accompanied by his fellow deputy marshal and the four agents of the Office of Price Administration, proceeded directly through the vestibule, living room and dining room of the house into the kitchen, the back door of which was open. Seated at the kitchen table was the informer and before him on the table was a packet of gasoline ration coupons. The defendant retreated through the kitchen door as the officers entered the front of the house but reappeared in the kitchen a moment or two later. The deputy marshal made known to him his official capacity and that he had a warrant to search the premises, a copy of which he handed to him to read.

Under the supervision of the deputy marshal, and with his assistance, his companions then commenced the search of the premises, during the course of which the defendant interrupted them with the statement: "There is no use going any further. Here are the stamps." Simultaneously he handed the searchers a bundle of gasoline ration stamps and the search was discontinued.

The defendant was questioned as to where he had gone when the officers entered the house and he finally admitted that he had taken other stamps and deposited them in the yard of the adjoining house. He went with some of the officers and retrieved them. The officers retained possession of the three sets of stamps, those taken from the kitchen table, those delivered by the defendant in the house, and those recovered in the yard of the adjoining house.

On November 30, 1944, the defendant was indicted on four counts. The first charged him with possessing, on or about September 29, 1944, gasoline coupons purportedly representing 201 gallons of gasoline, which he knew and had reason to believe were counterfeit, contrary to the provisions of § 2.5 of Ration Order No. 8, as issued by the Office of Price Administration and the statute of the United States in such case made and provided. The second charged him, on or about September 29, 1944, with the illegal transfer of 201 such coupons to John L. Reader. The third count is similar to the first except that it charges the possession of coupons purportedly representing 13,125 gallons of gasoline on or about October 3, 1944. The fourth charges him with illegal possession of a number of fuel oil ration coupons purportedly representing 26,600 gallons.

The defendant seasonably moved before the court that the evidence, consisting of gasoline and fuel oil ration stamps and his written statement obtained by the government officers at his home on the night of October 3, 1944, should be suppressed on the grounds, among others, that the warrant for the search of the premises was illegally issued upon an insufficient affidavit and without probable cause.

In answer thereto the government submitted, among other arguments, that the warrant for the search of the premises "could" have been issued under the provisions of the statute which authorizes search warrants for suspected counterfeits. This statute is directed to any place in which there shall appear probable cause to believe that the manufacture or concealment is being carried on of counterfeit money, coins, or obligations of the United States, or any foreign government, or any bank, as specified therein, or dies, hubs, molds, plates and other things used for the manufacture of the foregoing counterfeits. 18 U.S.C.A. § 287.

It cited the case of Sparks v. United States, 6 Cir., 90 F.2d 61, in apposition to the case at bar. In the Sparks case a search warrant had issued under this statute on an allegation that the defendant had concealed counterfeit molds in a straw tick in the back room of his house. The

search warrant was attacked for inadequacy of a basic showing of probable cause. The court made the following comment: "The gist of the contention as to the validity or invalidity of the warrant lies in the fact that it was based upon an affidavit executed upon information and belief. The affidavit, in its material portions, reads as follows: 'That affiant is informed by a reliable citizen that he the informer was in the presence of Ed Sparks, and while there Ed Sparks stated that he had counterfeit molds in his house, in back room, in straw tick and nobody could find them. Said house being a 1 story boxed house on John Harrison farm in Monroe County, Tenn.' The warrant was not accompanied by an affidavit executed by the informant. However, the United States Commissioner, called as a witness, testified at the trial that both the affiant, Vaughn, and the informant, Fortner, were present when the commissioner issued the search warrant, *and the informant testified under oath* that Ed Sparks had told him that he had these counterfeit molds in a bedtick at his home." 90 F.2d at page 63. (Italics supplied.)

The court held the search warrant valid on the theory that competent, oral, sworn testimony before the commissioner could be the basis of the finding of essential probable cause for the issuance of a search warrant *as authorized under this specific statutory provision.*

Two features distinguish the Sparks case from our case. The first is that it dealt with the counterfeit, or its accessory (the mold), which was the subject matter of the authorizing legislation. In our case the alleged counterfeit was of a rationing stamp or coupon not contemplated by the Congress when it passed the statute in question in 1907.

The second distinguishing feature is the fact that in the Sparks case, the informer was sworn by the commissioner, while in our case he was not.

The search warrant in this case could be issued only within the limitations prescribed in the general statutory provisions governing the issuance of such writ, found in 18 U.S.C.A. §§ 611 et seq. Particularly applicable are the terms of § 614, which read as follows: "The judge or commissioner must, before issuing the warrant, examine on oath the complainant and any witness he may produce, and require their affidavits or take their depositions in writing and cause them to be subscribed by, the parties making them. (June 15, 1917, c. 30, Title XI, § 4, 40 Stat. 228.)"

The search warrant in our case specifically recites that the *investigator of the Office of Price Administration* had complained on oath and in writing that he had reason to believe that: "certain property used as a means of committing a felony, in violation of a law or laws of the United States, to wit: Second War Powers Act of 1942, Section 1394.8178(c) and Section 2.6 of General Ration Order #8, Title 18, Section 72, U.S.C.A.", was located at 104 South Sussex Street, Gloucester, N. J., and that the property consisted of counterfeit gasoline ration coupons.

The pertinent language of the affidavit of support has been quoted heretofore and is palpably hearsay and something in the way of a prediction of "things to come". It could not form the basis of probable cause for the issuance of a search warrant. As to the informer's affidavits, nothing in § 614, to which reference has been made, would appear to authorize the United States Commissioner to notice such documents presented to him as evidence of probable cause. Certainly an informal inquiry by the Commissioner as to whether the affidavits submitted to him were true, could not constitute a compliance with the statute.

A somewhat similar set of circumstances caused the court in Nixon v. United States, 9 Cir., 36 F.2d 316, to comment as follows:

"On September 24, 1928, a United States commissioner issued to the United States marshal a search warrant in due form directing him to make search of the two rooms for alcoholic liquors. It recites that, 'Proof by affidavit having this day been made before me by E. M. Harrold stating facts from which it appears,' etc. No reference is therein made to any other affidavit or evidence. * * * The affidavit is sworn to, not before the commissioner, but before a notary public, and it is conceded that Harrold never appeared before the commissioner. The record also exhibits another affidavit sworn to on September 24 before the commissioner, by C. V. Brown, a deputy marshal; but, as already stated, this is in no way mentioned in the warrant. Without indicating the sources of knowledge, it categorically states that 'on the 23rd day of September, 1928, Harry Nixon sold to E. M. Harrold a pint flask of whiskey for which said E. M. Harrold paid said Nixon the sum of $2.50.'

"The statute authorizing search warrants in such cases provides that: 'The judge or commissioner must, before issuing the warrant, examine on oath the complainant and any witness he may produce, and require their affidavits or take their depositions in writing and cause them to be subscribed by the parties making them.' 40 Stat. 228 (18 U.S.C.A. § 614). The government concedes that under this provision a notary public has no authority to take the evidence, and that therefore Harrold's affidavit could not serve as the basis for the issuance of a warrant. Whether, in view of the fact that Brown's affidavit does not upon its face purport to explain the source of his knowledge or information, it could be held to constitute a sufficient showing, we need not decide, for it does not appear that the commissioner so treated it or gave it consideration. In referring only to the Harrold affidavit, by implication the warrant would seem to negative the assumption that the Brown affidavit was considered. We therefore feel constrained to hold that the warrant was void." 36 F.2d at pages 316 and 317.

We hold that the government officers proceeded here, too, with an invalid search warrant.

■ We may now take up the government's contentions that it was justified in its seizure of this evidence on grounds exclusive of authority which it claimed by reason of the search warrant. It asserts that since the marshal had a warrant for the arrest of the defendant he was legally authorized to search the premises, wherein he found the defendant, for instrumentalities of the crime. The fact is that the marshal testified that he made no use of the arrest warrant, he carried with him, until after the premises had been searched and the material had been seized.

The warrant for the arrest of the defendant had little more to commend it than the search warrant. It was issued on the complaint of a government investigator based solely on hearsay information charging at most a violation of regulations which constitute not a felony but a misdemeanor. It was not used until the full force of the illegal invasion of defendant's home and privacy had completely spent itself. The arrest in the case was made as an incident to the search under the invalid warrant rather than was the search an incident to the arrest.

■ The government submits other justifications, as for instance, that the defendant voluntarily surrendered the material seized by the marshal, or pointed it out to the officers. Such action by the defendant was taken only after his house had been invaded by at least six government officers who proceeded to institute their search exclusively and entirely upon the authority of a warrant that was worthless for such purpose. No argument offered by the government has sustained the seizure or acquisition of evidence by it under the search warrant or warrant of arrest utilized in this case.

■ The worthless search warrant in the hands of these officers left them in the position of trespassing upon defendant's guaranteed right under the Fourth Amendment to the Constitution.

■ The courts are heavily burdened to construe this fundamental right liberally and to thwart illegal invasion thereof. In Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177, the following doctrine was enunciated: "The effect of the 4th Amendment is to put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers, and effects, against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all entrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights." 232 U.S. at pages 391 and 392, 34 S.Ct., at page 344, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177.

■ The defendant's motion to suppress the evidence the government officers seized

on the occasion of their search of October 3, 1944, consisting of allegedly counterfeit gasoline and fuel oil stamps, and the written statement of the defendant, obtained from him as a result of such search, will be suppressed and an order to such effect should be entered.