UNITED STATES of America, Plaintiff,

v.

GENERAL PHARMACAL COMPANY et al., Defendants.

Crim. A. No. 104–61.

United States District Court
D. New Jersey.
June 8, 1962.

David M. Satz, Jr., U. S. Atty., Sanford M. Jaffe, Jerome D. Schwitzer, Asst. U. S. Attys., Newark, N. J., for the Government.

Hannoch, Weisman, Myers, Stern & Besser, by Albert G. Besser, Newark, N. J., and Samuel Hochstein, New York City, for defendants.

AUGELLI, District Judge.

The Criminal Information filed in this case charges a number of defendants with interstate shipments of counterfeit drugs in violation of certain sections of the Federal Food, Drug, and Cosmetic Act (21 U.S.C.A. §§ 331 and 333), and with a conspiracy to violate said Act.

The defendant Herman Wittelshofer is named in the conspiracy count of the Information. He moves the Court to suppress for use as evidence at the trial, a statement obtained from him on January 26, 1961, on the ground that the taking of said statement violated his constitutional rights against unreasonable search and seizure, due process, and his privilege against self-incrimination.

A hearing on defendant's motion took place on February 23, 1962. Defendant did not testify. His version of the manner in which the statement was obtained from him is set forth in an affidavit filed with the motion papers. Other affidavits filed with the Court were those of Morton M. Schneider, Cyril Osbrack and John F. Corbin. Schneider and Osbrack are Inspectors attached to the Federal Food and Drug Administration, and Corbin is a Detective connected with the New Jersey State Police. These men were subpoenaed by defendant's counsel to testify at the hearing, as was Budd M. Rigg, a Deputy Attorney General of New Jersey. Rigg, however, was not called to the stand.

Defendant is a chemist, doing business in Yonkers, New York, under the name of Persol Chemical Co. His business operations are subject to the provisions of the Federal Food, Drug, and Cosmetic Act and the rules and regulations promulgated pursuant thereto. From time to time routine inspections of his place of business would be made by Federal Food and Drug Inspectors.

During the year 1960, the State of New Jersey and the Federal Food and Drug Administration were engaged in an investigation concerning the alleged counterfeiting of drugs in New Jersey. On December 30, 1960, Schneider and Osbrack learned from William Junice, the proprietor of Junice Laboratories, located in Clifton, New Jersey, that defendant Wittelshofer was the purchaser from Junice, for cash, of large quantities of meprobamate powder, the active ingredient used in some of the alleged counterfeit tablets made by General Phamacal Company of Hoboken, New Jersey.

On the basis of this information, Schneider and Osbrack, on January 11, 1961, visited defendant at his place of business in Yonkers. They identified themselves as Inspectors attached to the Federal Food and Drug Administration and questioned defendant about his alleged participation in the counterfeit drug matter then under investigation.

On the occasion of this visit defendant was handed a Notice of Inspection.[1]

On January 26, 1961, Schneider and Osbrack again visited defendant at his plant. This time they were accompanied by Corbin and Rigg, who were also conducting an investigation of the counterfeit drug racket for the State of New Jersey. The four men entered defendant's premises and, after some discussion, he gave them a statement admitting that he had purchased from Junice Laboratories approximately 1400 kilos of meprobamate, and that he had delivered all of it to General Pharmacal Company in Hoboken.

It is this statement defendant now seeks to suppress on the ground that entry into his plant for the purpose of obtaining the statement was gained by a false representation that the men were there to make a routine inspection of his premises under 21 U.S.C.A. § 374(a). It is the government's contention that not only was no subterfuge or misrepresentation employed to gain access to defendant's premises, but that defendant's statement was freely, voluntarily and understandingly made, without threats, promises or compulsion of any kind.

The law is clear that a statement obtained as a result of an unreasonable search and seizure will be suppressed. United States v. Pollack, 64 F.Supp. 554 (D.N.J.1946); Nueslein v. District of Columbia, 73 App.D.C. 85, 115 F.2d 690 (1940); United States v. Tuzzo, 9 F.R.D. 466 (D.N.J.1949). The cases also hold that where entry into a defendant's premises is procured by fraud or misrepresentation, such entry is not by consent, and whatever is obtained as a result of such an illegal search and seizure is inadmissible as evidence in a federal criminal trial. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921); Fraternal Order of Eagles, etc. v. United States, 57 F.2d 93 (3 Cir.1932). It is also the law that an incriminating statement or confession that is voluntarily and understandingly made, without compulsion, is admissible in evidence and will not be suppressed. United States v. Burdick, 214 F.2d 768 (3 Cir.1954); United States v. Arnold's Pharmacy, 116 F.Supp. 310 (D.N.J.1953); Smith v. United States, 103 U.S.App.D.C. 48, 254 F.2d 751 (1958). See also United States v. Wheeler, reported in D.C., 149 F.Supp. 445 (1957); 3 Cir., 256 F.2d 745 (1958); D.C., 172 F.Supp. 278 (1959); 3 Cir., 275 F.2d 94 (1960).

The story told by defendant in his affidavit is sharply disputed in many material respects by the story related in the affidavits of the investigating officers and the testimony taken in open court.

The substance of defendant's affidavit is that on the occasion of the January 26 visit, "Mr. Schneider stated that he wanted to come in again for an inspection and since I knew he was a federal inspector, I permitted him and his companions to enter my premises in the be-

1. Notices of Inspection under the Federal Food, Drug, and Cosmetic Act are given pursuant to 21 U.S.C.A. § 374(a) and authorize inspections of premises subject to the Act. The statute reads as follows:

"For purposes of enforcement of this chapter, officers or employees duly designated by the Secretary, upon presenting appropriate credentials and a written notice to the owner, operator, or agent in charge, are authorized (1) to enter, at reasonable times, any factory, warehouse, or establishment in which food, drugs, devices, or cosmetics are manufactured, processed, packed, or held, for introduction into interstate commerce or are held after such introduction, or to enter any vehicle being used to transport or hold such food, drugs, devices, or cosmetics in interstate commerce; and (2) to inspect, at reasonable times and within reasonable limits and in a reasonable manner, such factory, warehouse, establishment, or vehicle and all pertinent equipment, finished and unfinished materials, containers, and labeling therein. A separate notice shall be given for each such inspection, but a notice shall not be required for each entry made during the period covered by the inspection. Each such inspection shall be commenced and completed with reasonable promptness."

lief that they were making another inspection under the federal statutes or continuing the one that had been made on January 11." Defendant also alleged he was subjected to "intensive, belligerent and antagonistic interrogation" at the hands of the officers; and was told, when he asked if he should not have his lawyer present, that this would not be necessary. Defendant refused to swear to the statement that he gave because, he says, he could not fully recollect the facts and could not vouch for the accuracy thereof; and that although he signed the statement, it was so poorly written that he could not read the writing. Defendant also claims that at no time was he warned any statement he might give could be used against him in a criminal proceeding.

On the other hand, the officers say that when they arrived at defendant's plant on January 26, defendant recognized the Federal Inspectors, Schneider and Osbrack; that they introduced defendant to the state officers, Corbin and Rigg, after which defendant was told that the purpose of the visit was to make further inquiries concerning the counterfeit drug investigation, which Schneider and Osbrack had discussed with defendant on January 11. Defendant, it is claimed, invited the officers into his plant; and Corbin and Rigg displayed their credentials. The officers say defendant was asked to tell what he knew about the matter under investigation; that at first he was reluctant to do so, but that after being shown a statement signed by Junice which named defendant as the purchaser of meprobamate, he agreed to tell all he knew. At this point, the officers claim, defendant was advised that any statement made could be used against him, and was told he was free to call his attorney, but declined to do so; also, that the story re-lated by defendant was taken down by one of the officers and after the statement was completed it was given to defendant to read; that he did so, made a correction therein, and then signed it. At no time, say the officers, were any promises or other inducements held out to defendant in connection with the obtaining of the statement, nor was any force or intimidation of any kind used in the procurement thereof; and at no time was any mention made of a routine drug inspection; and no such pretext was used to gain entry to defendant's premises.

The Court is thus confronted with conflicting versions regarding the manner in which access was gained to defendant's premises on January 26, and the circumstances surrounding the making of the statement in question. Two questions must be determined, both factual:

(1) Was fraud, trick, artifice or misrepresentation employed by the officers to gain entrance to defendant's plant on January 26, for the purpose of obtaining a statement from him?

(2) Was defendant's statement of January 26, entirely voluntary, and understandingly given, without compulsion of any kind?

After reviewing all of the evidence in this matter, the Court is satisfied that no fraud or misrepresentation was used to gain entry into defendant's premises on January 26. There is ample testimony to support the conclusion that such entry was made with the consent of the defendant and with full knowledge on his part of the purpose of the visit that was made on said date. The evidence also satisfies the Court that defendant's statement was entirely voluntary, and understandingly given, without compulsion or inducement of any kind.

Under the circumstances, the motion to suppress will be denied. Submit order.