UNITED STATES of America,

v.

GEL SPICE CO., INC., Barry Engel and Andre S. Engel, Defendants.

No. 80 CR 650.

United States District Court, E.D. New York.

Jan. 28, 1985.

U.S. Dept. of Justice, Raymond W. Philipps, Beverly S. Nash, Washington, D.C., of counsel, for the U.S.

Friend, Dorfman & Marks, New York City (Jerold W. Dorfman, New York City, of counsel), for Gel Spice Co. and Barry Engel.

Perles & Albert, New York City (David A. Beale, New York City, of counsel) for Andre S. Engel.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

The defendant corporation, its president, Barry Engel, and its vice-president, Andre Engel, are charged in a ten-count Information alleging, in substance, that the defendants permitted food to become adulterated within the meaning of §§ 342(a)(3) and 342(a)(4) of the Food, Drug and Cosmetic Act (the "Act"), 21 U.S.C. § 301 *et seq.* Defendants made several motions to suppress evidence and to dismiss certain counts of the Information. United States Magistrate A. Simon Chrein of this Court denied those motions, and defendants have appealed. 28 U.S.C. § 636(b). This Memorandum and Order embodies ruling made orally on October 21, 1983.

### Facts

Gel Spice, Inc. has been the subject of regular inspections by the Food and Drug Administration (FDA) since 1972. In July 1976, March-April 1977, and July 1977, FDA inspectors conducted three extensive inspections of the Gel Spice warehouse in Brooklyn, New York. On those occasions photographs were taken and certain lots of allegedly adulterated foods were seized.

Three hearings were subsequently held pursuant to § 305 of the Act, 21 U.S.C. § 335. Section 305 hearings afford a person against whom the FDA is contemplating a criminal prosecution "appropriate notice and an opportunity to present his views, either orally or in writing, with regard to such contemplated proceeding" before the matter is referred to the United States Attorney for prosecution. *Id.*

The first § 305 hearing was held on October 27, 1976 following the July 1976 inspection, and the second on December 20, 1977 following the March-April and July 1977 inspections. On September 18, 1978, the FDA Chief Counsel formally referred a request for prosecution of Gel Spice to the Office of the United States Attorney in the United States Department of Justice.

In January 1979, the FDA conducted another inspection, which disclosed an active rodent infestation on the Gel Spice premises. Another § 305 hearing was held on

May 30, 1979; and this Information was filed in December 1980.

*Discussion*

### 1. FDA's Good Faith

Defendants' first motion is to dismiss the Information or to suppress evidence on the ground that the government obtained the evidence in bad faith; that is, that the government conducted the searches, not in furtherance of administrative purposes, but rather to obtain evidence for a criminal prosecution that was already planned. Defendants contend that they are entitled to an evidentiary hearing at least on the issue of the government's good faith.

■ A regulatory agency may investigate possible violations of law through its administrative process, provided that its inquiries are for a proper purpose, the information sought is relevant to that purpose, and the statutory procedures are observed. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964). Once the agency has established the existence of a valid civil purpose, the burden shifts to the defendants to come forward with evidence of bad faith. *See United States v. O'Henry's Film Works*, 598 F.2d 313, 320 (2d Cir.1979); *United States v. Morgan Guaranty Trust Co.*, 572 F.2d 36, 42–43 n. 9 (2d Cir.), *cert. denied*, 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978). Magistrate Chrein held (Interim Report and Recommendation at 11–12), and I agree, that the burden is on the defendants in this case "to disprove the actual existence of a valid ... purpose ..." *United States v. LaSalle National Bank*, 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978).

■ Before obtaining evidentiary hearing on the issue of the government's good faith, defendants must make a substantial preliminary showing of bad faith. *United States v. O'Henry's Film Works*, *supra*, 598 F.2d at 320; *United States v. Morgan Guaranty Trust Co.*, *supra*, 572 F.2d at 42–43 n. 9; *United States v. Morgan Guaranty Trust Co.*, 524 F.Supp. 24, 27 (S.D.N.Y.1981). To establish bad faith, defendants must show that the sole purpose of the investigation was investigatory, rather than regulatory. *United States v. LaSalle National Bank*, *supra*, 437 U.S. at 316–17, 98 S.Ct. at 2367–68; *Securities and Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368, 1387 (D.C. Cir.) (en banc), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); *United States v. Schutterle*, 586 F.2d 1201, 1203 (8th Cir.1978).

■ I agree with Magistrate Chrein that the FDA conducted its investigation pursuant to a valid administrative scheme and not for the purpose of gathering evidence (Final Report and Recommendation at 2–3). Magistrate Chrein further found that the government made its decision on September 18, 1978, to prosecute defendants for the violations discovered at the July 1976, March-April 1977, and July 1977 inspections. The decision to prosecute defendants for the January 1979 violations was made on November 21, 1979. *Id.* These findings, which I adopt, undermine defendants' contention that the FDA inspections were "for an investigatory rather than regulatory purpose." *United States v. Shaefer, Michael and Clairton Slag, Inc.*, 637 F.2d 200, 204 (3d Cir.1980).

■ An evidentiary hearing is not required without a meaningful factual showing of an improper purpose by the agency. *Securities and Exchange Commission v. Howatt*, 525 F.2d 226, 229 (1st Cir.1975). I am satisfied that the defendants have made no such showing in this case. Accordingly, defendants' motion for dismissal, suppression or an evidentiary hearing regarding the good faith of the FDA is denied.

### 2. Discovery of FDA Records

■ Because I have found that defendants failed to make a substantial preliminary showing of bad faith, it follows that they are not entitled to discovery of internal FDA records related to the inspection of the Gel Spice premises beyond those already in their possession. I reject defendants' contention that they are entitled

to discovery as a matter of law. In accordance with *United States v. Berrios,* 501 F.2d 1207 (2d Cir.1974); Magistrate Chrein made an *in camera* inspection of the materials sought by defendants. He determined that the documents sought were not relevant to the defenses raised; that is, they would not tend to establish the elements of any defense (Interim Report and Recommendation at 16–17). Under *Berrios,* therefore, they need not be produced. I have conducted a *de novo* examination of the documents and conclude that they are not demonstrably relevant to the defenses raised. Furthermore, the documents in question closely parallel records that have already been provided to the defendants in discovery proceedings. Their right of confrontation has been rejected.

■ I am satisfied that Magistrate Chrein's *ex parte* examination of the documents was proper. Fed.R.Crim.P. 16(d)(1) permits a party to make an *ex parte* showing when seeking a protective order; the adversary's rights are protected by the fact that the text of the party's statement must be preserved in the event of an appeal. *Id.* Counsel for the government was present solely to identify documents and answer questions. The *ex parte* examination was well within the bounds of the Code of Professional Responsibility and the Code of Judicial Conduct. No prejudice has inured to defendants.

### 3. *Statements Made During FDA Inspections*

Defendants also move to suppress all statements made by Barry Engel and Andre Engel during the four inspections of the Gel Spice premises. The motions are based on alleged violations of defendants' rights under the Fourth and Fifth Amendments.

■ Defendants made the statements in question during inspections conducted pursuant to lawful authority and consistent with the requirements of the Act, 21 U.S.C. § 374. FDA personnel presented written notice of each inspection and produced the proper credentials. I agree with Magistrate Chrein that defendants consented to each of the inspections (Final Report and Recommendation at 11). Defendants have submitted no evidence to support their contention that statements were obtained from them involuntarily, either through coercion or duplicity. Because the defendants were not in custody, *Miranda* warnings were not required. *See United States v. Jamieson-McKames Pharmaceuticals, Inc.,* 651 F.2d 532, 543 (8th Cir.1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982); *United States v. Dudgeon,* 279 F.Supp. 300, 302 (D.Mass.1967). The statements were made voluntarily during lawful inspections; I therefore deny the motion to suppress.

### 4. *Statements Made at Section 305 Hearings*

Defendants have also moved to suppress statements made at the § 305 hearings. These hearings were held following the FDA inspections to give defendants an opportunity to head off a criminal prosecution for violation of the Act. *See* 21 U.S.C. § 335; 21 C.F.R. § 7.84 (1982). Defendants' motion to suppress is based on the allegation that at the time of each hearing the FDA had already recommended prosecution for the alleged violations that gave rise to the hearing. They contend that if statements made at such a hearing are not given adequate consideration before a decision to prosecute is reached, the maker of the statement has been misled as to the purpose of the hearing.

■ As noted above, however, I have adopted Magistrate Chrein's findings that the decision to prosecute was made after those hearings (Final Report and Recommendation at 2–3). Thus defendants have not been misled. I adopt Magistrate Chrein's finding that defendants were well aware of the possible consequences of the hearings (Final Report and Recommendation at 13); the notice of hearing makes clear that "any civil action which may have been taken against the goods involved, such as seizure, does not preclude prosecu-

tion of those responsible for the violation; *the hearing concerns the possible criminal action only.*" Accordingly, defendants' motion to suppress statements made during the § 305 hearings is denied.

### 5. *Suppression of Gel Spice Records*

The individual defendants have also moved under 21 U.S.C. § 373 to suppress records regarding the shipment and importation of certain foods. Section 373 provides that carriers engaged in interstate commerce and persons receiving food in interstate commerce or holding such articles so received must furnish to the FDA records relating to the shipment of foods. Section 373 states, however, that evidence obtained in this fashion "shall not be used in a criminal prosecution of the person from whom obtained." *Id.*

■■■ Immunity under § 373 arises when (1) the FDA has requested the records, (2) the custodian has refused to provide them, and (3) the FDA investigator again requests the records specifically under the authority of 21 U.S.C. § 373 and presents a written statement to that effect. *United States v. Lyon Drug Co.*, 122 F.Supp. 597, 601 (E.D.Wisc.1954); *United States v. Scientific Aids Co.*, 117 F.Supp. 588, 589 (D.N.J.1954). Magistrate Chrein found that the FDA investigators did not invoke the authority of § 373 to obtain the records, and, accordingly that the immunity provisions of the statute did not apply (Final Report and Recommendation at 3). Magistrate Chrein further found that defendants showed the records to the FDA investigators voluntarily, which also precludes invocation of § 373 immunity (Final Report and Recommendation at 4). *See United States v. Herold*, 136 F.Supp. 15, 16 (E.D.N.Y.1955); *United States v. Lyon Drug Co.*, 122 F.Supp. at 599–601. I adopt Magistrate Chrein's findings on these issues and therefore, deny defendants' motion to suppress.

### 6. *Subpoena of Gel Spice Records*

■■■ Defendants have also moved to quash the trial subpoena of the same Gel Spice corporate records discussed in part 5, *supra.* Fed.R.Crim.P. 17(c) provides for the subpoena of corporate records, and, as a corporate defendant, Gel Spice is not entitled to claim Fifth Amendment protection against self-incrimination. *Wilson v. United States*, 221 U.S. 361, 382–84, 31 S.Ct. 538, 545–46, 55 L.Ed. 771 (1911); Wright, *Federal Practice and Procedure* § 274 (2d ed. 1982). Similarly, corporate officers enjoy no personal Fifth Amendment privilege with regard to corporate records even when those records might incriminate them personally. *Bellis v. United States*, 417 U.S. 85, 88–90, 94 S.Ct. 2179, 2182–2184, 40 L.Ed.2d 678 (1974). For these and the other reasons set forth in Magistrate Chrein's Final Report and Recommendation (at 4–11), the motion to quash the trial subpoena of Gel Spice records is denied.

### 7. *Photographs of Premises*

Defendants next contend that photographs of Gel Spice premises taken during the FDA inspections must be suppressed. They argue that the photographs were unlawfully obtained and are unfairly prejudicial.

■■■ The photographs were taken during lawful inspections conducted pursuant to 21 U.S.C. § 374 (1976). FDA personnel followed all applicable procedural requirements. There is no evidence of unlawfulness.

■■■ I also find no merit in defendants' contention that the photographs are unfairly prejudicial. The standard for admissibility is whether the photos fairly and accurately depict the scene. Magistrate Chrein found that there is no evidence that the photographs contain distortions (Interim Report and Recommendation at 5). In addition, before the photographs can be admitted at trial, a proper foundation for their admission must be laid. Defendants will be amply protected by their opportunity to cross-examine the FDA investigator through whom the photographs are offered.

Rule 403 of the Federal Rules of Evidence allows suppression if the probative value of the evidence is outweighed by the danger of unfair prejudice. Of course, relevant evidence is by its very nature prejudicial. The test is whether it is *unfairly* prejudicial. No basis exists for such a finding at the time. Accordingly, the motion to suppress the photographs is denied.

### 8. *Number of Counts in the Information*

Defendants' final objection is that because the charges in the Information are based on four investigations of the Gel Spice premises, the Information should contain no more than four counts. In their view only one crime may arise from one investigation. The government contends that there are as many crimes as there are different kinds of adultered foods.

Neither the Supreme Court nor the Second Circuit has spoken directly on this issue. A district court in this Circuit, however, has held that one unsanitary condition may support multiple convictions based on different foods. *United States v. J. Treffiletti & Sons*, 496 F.Supp. 53, 56 (N.D.N.Y. 1980); *see United States v. H.B. Gregory Co.*, 502 F.2d 700 (7th Cir.1974), *cert. denied*, 422 U.S. 1007, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975); *Akin Distributors v. United States*, 399 F.2d 306, 307 (5th Cir. 1968), *cert. denied*, 394 U.S. 905, 89 S.Ct. 1013, 22 L.Ed.2d 216 (1969).

▮▮▮ The applicable test for whether two violations constitute different offenses is whether each violation requires proof of an additional fact that the other does not. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The ten counts in this Information involve different foods, manufactured in different countries, labeled differently, and shipped to defendants on different dates.

I agree with Magistrate Chrein that each count will require proof of additional facts (Interim Report and Recommendation at 7).

**1.** *See* item 5 of the December 13, 1982 report ("Report") at 9–14.

**2.** *See* Report at 11.

Accordingly, defendants' motion to dismiss some of the counts in the Information is denied.

I have reviewed the record in this case and the Interim and Final Reports of Magistrate Chrein, and hereby adopt in full the findings contained therein.

SO ORDERED.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE

### July 15, 1983

A. SIMON CHREIN, United States Magistrate.

This report incorporates the findings and recommendations made in the interim report ("Report") submitted by the undersigned on December 13, 1982, a copy of which is attached. Although findings and recommendations were made with respect to seven matters in the interim report, defendants still had pending various motions to dismiss this prosecution and to suppress evidence after the report was filed. Decision on those motions was reserved pending testimony by the parties at evidentiary hearings which were held on January 4, 19 and 20, 1983. Having reviewed all of the papers submitted to date and having heard argument of all counsel on January 4th and the testimony of various witnesses on January 19th and 20th, I make the following findings and recommendations:

1. Concerning defendants' motion to dismiss or suppress evidence on the ground that the government obtained evidence in bad faith, i.e., inspections were conducted to gather evidence for a pre-determined criminal prosecution,[1] I recommend that defendants' motion be denied. Initially this question was reserved pending findings to be made at an evidentiary hearing.[2] However, after consideration of the documents submitted by the government in late December of 1982,[3] the undersigned finds that

**3.** These documents include the following: Government's Proffer of Alternative Modes for Showing That Inspections in Question Were Not Undertaken Solely for a Criminal, Evidence

since defendants have failed to make a substantial preliminary showing of bad faith, the defendants have not met their burden and, therefore, are not entitled to a hearing on the issue of the government's bad faith. *See United States v. O'Henry's Film Works,* 598 F.2d 313, 320 (2d Cir. 1979); *United States v. Morgan Guaranty Trust Company,* 572 F.2d 36, 43 n. 9 (2d Cir.), *cert. denied sub nom. Keech v. United States,* 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978). The questions raised in the December, 1982 report at 13 were satisfactorily answered not only by subsequent papers [4] but also by argument of counsel for both sides on January 4, 1983 at which time I found that defendants were not entitled to a hearing.[5] Consideration was also given to defendants' January 13, 1983 letter which requested reconsideration of my January 4th determination but I am still unpersuaded that the defendants have advanced sufficient evidence of the government's bad faith so as to warrant an evidentiary hearing on the matter.[6]

I find that the government conducted its investigations pursuant to a valid administrative scheme and not for the purpose of gathering evidence. Further, I find that the government made its decision to prosecute the defendants for violations of the Federal Food, Drug and Cosmetic Act of 1938 discovered at the July, 1976, March-April, 1977 and July, 1977 inspections on September 18, 1978.[7] I also find that the decision to prosecute the defendants for violations of the Federal Food, Drug and Cosmetic Act discovered at the January, 1979 inspection was made on November 21, 1979. Such findings undermine defendants' contention that the government had decided to prosecute the defendants prior to its inspections and had used the inspections as an evidence-gathering device.

2. Concerning defendants' motion that Counts 8, 9 and 10 of the Information be dismissed,[8] I recommend that defendants' motions to suppress the evidence gathered at the January, 1979 inspection and to dismiss Counts 8, 9 and 10 which stem therefrom be denied. I find that the January, 1979 inspection was conducted in good faith pursuant to a November, 1978 work plan although such plan was not completed until January, 1979. Further, I find that the inspection was not conducted by the government for the purpose of gathering evidence to buttress its September, 1978 prosecution recommendation but, rather, was part of a valid administrative scheme.[9]

3. Concerning defendants' motion to suppress records regarding the shipment and importation of certain foods under 21 U.S.C. § 373 (1946) with regard to the defendants Barry Engel and Andre Engel,[10] I recommend that the defendants' motion on this issue be denied. I find that the FDA investigators did not invoke the authority of Section 373 to gain access to the shipping records so as to trigger the immunity provisions of the statute.[11] This finding that the documents were not requested pursuant to Section 373 incorporates the finding that the records were shown to FDA investigators voluntarily, thereby eliminating all grounds for defendants' motion to suppress the documents.[12]

4. Concerning defendants' motion to quash the subpoena of Gel Spice corporate records regarding the shipment and impor-

---

Gathering Purpose dated December 28, 1982; Supplemental Declarations of Joseph P. Hile dated December 28, 1982; and Declaration of Frederick W. Blumenschein dated December 29, 1982.

**4.** *See* note 3 *supra.*

**5.** *See* January 4, 1983 transcript at 5–6.

**6.** *See* January 19, 1983 transcript at 10.

**7.** *See* January 4, 1983 transcript at 4.

**8.** *See* item 6 of the Report at 15–16.

**9.** *See* January 4, 1983 transcript at 4–5.

**10.** *See* item 10 of the Report at 20–24.

**11.** *See* January 20, 1983 transcript at 97; *see also* Report at 20–24.

**12.** *See* item 10 of Report at 20.

tation of certain foods,[13] I recommend that defendants' motion be denied. In their April 16, 1982 motion to quash, defendants' sole objection to the production of the documents was based on the following grounds:

(a) The documents sought constitute records showing the movement in interstate commerce or the holding thereof during or after such movement of any food, drug, device, or cosmetic, within the meaning of 21 U.S.C. § 373, and thus cannot be used in a criminal prosecution of the person from whom obtained.

(b) The Government is attempting to utilize a subpoena to circumvent the provisions of 21 U.S.C. § 373 to nullify the impact of any favorable ruling which this Court may render in defendants' motion to suppress the same documents which is presently pending before this Court.

Since I have already found that 21 U.S.C. § 373 was not invoked at the time the defendants first showed the interstate records to the FDA investigators,[14] the immunity it provides in a criminal prosecution to one who produces documents pursuant to Section 373 is not available to any of the defendants. Therefore, the issues raised above in subparagraphs (a) and (b) are now moot.

Furthermore, since the documents requested are corporate records and not the personal papers of either Barry Engel or Andre S. Engel, the protection of the fifth amendment against self-incrimination is not available to either the corporate defendant, Gel Spice, Inc., or the individual defendants, who also happen to be the custodians of those records as officers of Gel Spice. *See* report at 24; *see also Curcio v. United States,* 354 U.S. 118, 122, 77 S.Ct. 1145, 1148, 1 L.Ed.2d 1225 (1957); *United States v. O'Henry's Film Works,* 598 F.2d at 316; *cf. United States v. Guterma,* 272 F.2d 344 (2d Cir.1959) (court quashed so much of subpoena that requested personal books and records of the defendant). A corporate officer may not claim the personal privilege

against compulsory self-incrimination with regard to corporate records even if those records might incriminate him personally. *Bellis v. United States,* 417 U.S. 85, 88–90, 94 S.Ct. 2179, 2182–2184, 40 L.Ed.2d 678 (1974); *United States v. MacKey,* 647 F.2d 898, 900 (9th Cir.1981).

The preceding analysis should dispose of defendants' motion to quash. However, at the January 20th hearing the court *sua sponte* raised the issue of whether or not an individual defendant against whom there is an outstanding information or indictment can be compelled to deliver pursuant to a subpoena evidence that would establish the essential elements of the charges against him. The undersigned requested the parties to brief this issue at the close of the January 20th hearing.

■ After reviewing the correspondence from both sides,[15] I am persuaded that a defendant may be compelled to produce documents pursuant to a subpoena after an information has been filed even though the documents may be used as evidence against him. *See United States v. MacKey,* 647 F.2d at 901; *United States v. Berrios,* 501 F.2d 1207, 1212 (2d Cir.1974) (material produced pursuant to a Rule 17(c) subpoena is that which would tend to establish the elements of a charge or defense); *United States v. Woodner,* 28 F.R.D. 22 (S.D.N.Y.1961), *aff'd,* 317 F.2d 649 (1963); *United States v. Eli Lilly, & Co.,* 24 F.R.D. 285 (D.N.J.1959); *United States v. Gross,* 24 F.R.D. 138 (S.D.N.Y.1959); *In re Investigation of World Arrangements, etc.,* 13 F.R.D. 280, 283 (D.D.C.1952). The fact that after an information has been filed evidence is requested pursuant to a subpoena that inculpates the defendant does not preclude its production and use as evidence. *United States v. Authement,* 607 F.2d 1129, 1131–32 (5th Cir.1979).

One final issue must be resolved with regard to the defendants' motion to quash the government's subpoena, that of the va-

---

**13.** *See* item 9 of the Report at 20.

**14.** *See* section 3 *supra.*

**15.** *See* the government's January 26, 1983 letter and defendants' February 8, 1983 response.

lidity of the subpoena itself. Defendants raised this issue for the very first time in their February 8, 1983 letter. Defendants claim that the subpoena was vague and overbroad and that the government has failed to demonstrate its need for the documents. Although the government did not have the opportunity to address these issues, I will examine them briefly in the interest of expediency.

The subpoena at issue here was originally returnable on the date first set for trial, August 3, 1981, which date was subsequently postponed. At a March 22, 1982 hearing before the Honorable Joseph M. McLaughlin the court instructed the defendants to produce the subpoenaed materials within two weeks.[16] Defendants' motion to quash was dated April 16, 1982; the government filed its response on May 5, 1982.

■■■ Rule 17(c) of the Federal Rules of Criminal Procedure governs the use of subpoenas in criminal cases. Subsection (c) of that rule covers subpoenas of documentary evidence and provides that:

> A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit [them] to be inspected by the parties and their attorneys.

The purpose of the rule is not to facilitate discovery but, rather, to enable one to obtain and inspect evidentiary material prior to trial. *See United States v. Nixon,* 418 U.S. 683, 698–99, 94 S.Ct. 3090, 3102–03, 41 L.Ed.2d 1039 (1974); *Bowman Dairy Co. v. United States,* 341 U.S. 214, 219–20, 71

S.Ct. 675, 678–79, 95 L.Ed. 879 (1951); *United States v. Cuthbertson,* 630 F.2d 139, 144 (3rd Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981); *United States v. Marchisio,* 344 F.2d 653, 669 (2d Cir.1965). Rule 17(c) is available for use by either party. *United States v. Woodner,* 28 F.R.D. at 23; *United States v. Gross,* 24 F.R.D. at 141; 2 Wright, *Federal Practice and Procedure* § 274 (1982).

The court upon motion made promptly may quash or modify a subpoena if compliance would be either unreasonable or oppressive. Fed.R.Crim.P. 17(c); *United States v. Nixon,* 418 U.S. at 698, 94 S.Ct. at 3102; *In re Special Grand Jury No. 81–1,* 676 F.2d 1005, 1010 n. 5 (4th Cir.1982). Defendants have made no claim that the government's request is either unreasonable or oppressive. The documents sought relate to the shipment, receipt and/or payment by Gel Spice for foods traveling in interstate commerce and received by the defendants on ten separate occasions. The government's request appears to encompass a minimal number of documents that have already been reviewed by the FDA since the government was given access to these records during the various inspections.

■■■ Materials produced pursuant to a subpoena may be provided at trial or prior to trial. A subpoena returnable on the day of trial may be issued without leave of court. *United States v. Van Allen,* 28 F.R.D. 329, 334 (S.D.N.Y.1961). However, it is within the discretion of the trial court whether or not to order production of subpoenaed materials prior to trial. *United States v. Nixon,* 418 U.S. at 702, 94 S.Ct. at 3104; *United States v. MacKey,* 647 F.2d at 901; *United States v. Lieberman,* 608 F.2d 889, 904 (1st Cir.1979), *cert. denied,* 444 U.S. 1019, 100 S.Ct. 673, 62 L.Ed.2d 649 (1980); *United States v. Berrios,* 501 F.2d at 1212. Such decision will be disturbed on appeal only where the action was clearly arbitrary or without support in

---

**16.** *See* government's Memorandum in Opposition to Defendants' Motion to Quash Subpoena

n. 1 filed May 5, 1982.

the record. *United States v. Nixon*, 418 U.S. at 702, 94 S.Ct. at 3104.

If the subpoena were still a trial subpoena, there would be no question that the defendants would be required to produce the documents requested on the day of trial. However, at the March 22, 1982 hearing before Judge McLaughlin, the government requested that the documents be produced *prior to trial* pursuant to Fed.R.Crim.P. 17(c).[17]

In order to obtain documents prior to trial the party making the request must demonstrate the following:

(1) that the documents sought are evidentiary and relevant;

(2) that they are not otherwise procurable in advance of trial by the exercise of due diligence;

(3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial; and

(4) that the application is made in good faith and is not intended as a general fishing expedition.

*United States v. Nixon*, 418 U.S. at 699–700, 94 S.Ct. at 3103–3104 *citing United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y.1952); *United States v. Witt*, 542 F.Supp. 696, 697–98 (S.D.N.Y.1982). The movant must establish the relevancy and admissibility of the records sought and specify the documents with reasonable particularity. *United States v. Nixon*, 418 U.S. at 700, 94 S.Ct. at 3103. The test for enforcement of a pretrial subpoena is whether the subpoena represents a good faith effort to obtain relevant evidence or a fishing expedition to expand discovery. *Bowman Dairy Co. v. United States*, 341 U.S. at 220–21, 71 S.Ct. at 678–79; *United States v. Cuthbertson*, 630 F.2d at 144.

Although the government bears the burden with regard to pretrial production of the subpoenaed documents, it did not have the opportunity to address the various issues since the defendants raised the question of the subpoena's validity at such a late date. Accordingly, the undersigned will attempt to ascertain whether or not the government has already satisfied its burden from the record already developed.

There is no doubt that the documents in question are relevant since they relate to the charges in the Information. *See United States v. Gross*, 24 F.R.D. at 140. Through their use the government will attempt to establish the fact that the foods inspected at the Gel Spice premises traveled in interstate and/or foreign commerce, an essential element of the charge brought under 21 U.S.C. § 331(k) (Supp.II 1949) which prohibits any act that results in the adulteration of food that is being held for sale after shipment in interstate commerce.

Contrary to the defendants' claim that the "subpoena is overly broad and does not request specific documents," [18] the government has tailored its request to records concerning ten discrete shipments of goods, thereby specifying its request with reasonable particularity. *See In re Rabbinical Seminary, etc.*, 450 F.Supp. 1078, 1084 (E.D.N.Y.1978). Each set of documents is clearly identified so that their production will not be burdensome. Furthermore, it would appear that the documents are admissible as records kept in the ordinary course of doing business. Fed.R.Evid. 803(6); *see also United States v. Gross*, 24 F.R.D. at 141.

Although the government has not claimed that the materials are not available from any other source, the fact that they deal with shipments of goods from or through firms located outside the United States would make it impossible for the government to obtain the records since this court would have no jurisdiction over such companies. Additionally, although the government has not stated it must have the documents prior to trial, in view of the fact that the original trial was scheduled to

---

**17.** *See* note 15 *supra.*

**18.** *See* letter of February 8, 1983.

start almost two years ago, production of the documents now would facilitate the trial once commenced, thereby fulfilling the purpose of Fed.R.Crim.P. 17(c), i.e., to expedite trials by requiring production of evidence beforehand. *Bowman Dairy Co. v. United States,* 214 U.S. at 220, 71 S.Ct. at 679.

Finally, I find that the government's motion was made in good faith since it was made for the purpose of obtaining evidence for use at trial and not for the purpose of unearthing additional documentary evidence. *See United States v. Gross,* 24 F.R.D. at 141. The government has long been aware of the existence of the documents, having examined the records during the various inspections.

5. Concerning defendants' motion to suppress statements made by Barry Engel and Andre S. Engel during the various investigations on the ground that such statements were coerced,[19] I recommend that defendants' motion to suppress be denied since I find that defendants' statements were voluntarily made during lawful inspections. Since defendants were not in custody, *Miranda* warnings were not required. *See United States v. Jamieson-McKames Pharmaceuticals, Inc.,* 651 F.2d 532, 543 (8th Cir.1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982). Furthermore, the inspections were conducted pursuant to lawful authority and were consistent with the requirements of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 374 (1976). Prior to each inspection FDA personnel produced credentials and presented a written notice of inspection to either Andre S. Engel or Barry Engel.

Defendants have submitted no evidence that FDA personnel coerced them into making statements or used threats of any kind. Rather, defendants consented to each of the inspections at issue. Additionally, the reports of those investigations indicate that the defendants were generally cooperative. It is hard to believe that the owners of a corporation which has been in business for approximately twenty-five years would be intimidated so easily by FDA personnel. In fact, Barry Engel testified at the January 19th hearing that he refused to sign a statement drafted by an FDA investigator because Mr. Engel did not agree with its contents.[20]

6. Concerning defendants' motion to suppress statements made in the course of hearings conducted pursuant to 21 U.S.C. § 335 (1958) (also known as a "§ 305 hearing"), I recommend that defendants' motion to suppress be denied.[21] Three hearings were held on October 27, 1976, December 20, 1977 and May 30, 1979 in order to give defendants an opportunity to explain why criminal action should not be taken against them for violation of the Federal Food, Drug and Cosmetic Act. *See* 21 U.S.C. § 335; 21 C.F.R. § 7.84 (1982). Prior to each hearing defendants received a notice of hearing, an information sheet describing the purpose and format of the hearing and a list of the adulterated foods that were the subject of the hearing.[22]

I find that defendants were aware of the possible consequences of the hearing (i.e., criminal prosecution) because the hearing notice advised them of that fact. Andre Engel appeared at the first § 305 hearing on October 27, 1976 and again at the second hearing at which time he requested an adjournment in order to return with counsel. Barry Engel, accompanied by counsel, represented Gel Spice and the individual defendants at the second hearing on December 20, 1977 and then again on May 30, 1979.

Since the defendants have failed to show that the government had already decided to prosecute them before the § 305 hearings were held,[23] I find that the statements made at the § 305 hearings were not taken

---

19. *See* item 11 of the Report at 24.

20. *See* January 19, 1983 transcript at 122–24.

21. *See* January 20, 1983 transcript at 42.

22. *Id.* at 51–52.

23. *See* pp. 2–3 *supra.*

in violation of the defendants' constitutional rights and, therefore, the evidence gathered therefrom should not be suppressed. *See United States v. Andreadis*, 234 F.Supp. 341, 347–49 (E.D.N.Y.1964).

Objections to the findings and recommendations made herein and in the December 13, 1982 report shall be filed with the Honorable Joseph M. McLaughlin no later than August 1, 1983.

## INTERIM REPORT AND RECOMMENDATION

### December 13, 1982

The Honorable Joseph McLaughlin has referred the defendants' motions to dismiss the information to the United States Magistrate for a report and recommendation.

The defendants were charged in a ten count information alleging, in substance, that the defendants permitted food to become adulterated within the meaning of 21 U.S.C. §§ 342(a)(3) and 342(a)(4) (1946). The information was brought against Gel Spice, Inc., its president, Barry Engel, and its vice-president, Andre Engel.

Gel Spice, Inc. has been the subject of regular inspections by the Food and Drug Administration (FDA) since 1972 (Hile Affidavit ¶ 9). In July, 1976, March-April, 1977 and July 1977, inspectors from the FDA conducted three extensive inspections of the Gel Spice warehouse in Brooklyn, New York. Photographs were taken at the inspections and seizures were made of certain lots of adulterated foods. Pursuant to the Federal Food, Drug and Cosmetic Act (F, D & C Act) of 1938, § 305, 21 U.S.C. § 335 (1958), defendants were given the opportunity to present their views to the FDA at a section 305 hearing on October 27, 1976 following the July, 1976 inspection and on December 20, 1977 following the March-April and July, 1977 inspections. On September 18, 1978, the FDA Chief Counsel formally referred a request for prosecution of Gel Spice to the United

States Department of Justice (DOJ), Office of the United States Attorney (Hile Affidavit ¶ 15). In January, 1979, consistent with its regulatory work plans, the FDA conducted a fourth inspection of the Gel Spice premises which also disclosed an active rodent infestation (Hile Affidavit ¶ 16). Another section 305 hearing was held following that inspection on May 30, 1979. The information was filed in December, 1980.

The defendants have brought various motions to suppress evidence and to dismiss certain counts of the information. The undersigned held a hearing on May 5, 1982 to resolve the issues. A second hearing was held on June 29, 1982 during the first part of which the undersigned conducted an *in camera* review of various government documents out of the presence of the defendants but with counsel for the government present.[1]

The purpose of the *in camera* review was to determine if certain FDA documents were, in fact, privileged, and therefore, not subject to discovery by the defendants, as well as to ascertain the good faith of the government.

Defendants had sought disclosure of the documents in order to establish their claim that the FDA had acted in bad faith during its inspections of the Gel Spice premises, i.e., the FDA was not merely performing its regulatory function of administering the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301–392 (1946) but, rather, was gathering evidence for pre-ordained criminal prosecution of the defendants.

Before turning to the issues of privilege and good faith, the undersigned will dispose of other matters raised by the defendants in their multiple motions to suppress and dismiss.

### ISSUES RESOLVED ON MAY 5, 1982

1. First, the defendants have moved to suppress the photographs taken by the FDA inspectors during the inspections on the ground that they are inflammatory and,

---

1. A transcript of the conversations between the Magistrate and counsel for the Government has

been prepared and filed under seal.

therefore, unfairly prejudicial. In addition the defendants argue that the photographs were not taken in a reasonable manner and, therefore, should not be admissible.

The FDA inspections of Gel Spice, Inc. were conducted pursuant to 21 U.S.C. § 374 (1976) which provides a flexible standard of reasonableness to define the contours of an FDA inspection. The FDA's *Inspection Operations Manual* instructs inspectors that "[g]ood photographs are one of the most effective and useful forms of evidence of a violation." [2] Under the circumstances present in this case, the photographing of the warehouse conditions by FDA agents was not unreasonable. The agents were in the warehouse pursuant to lawful authority and followed all procedural requirements mandated under 21 U.S.C. § 374. The photographs were taken as part of the inspection and the inspectors made no effort to conceal the fact that photographs were being taken (Hile Affidavit ¶ 19). In addition, the photographs are not suppressible under Rule 403 of the Federal Rules of Evidence since the probative value of the photographs are not, at this time, outweighed by the danger of unfair prejudice. The standard to be used is whether the photographs accurately depict the scene at a particular point in time. The photographs were taken during the normal course of the investigation. There is no evidence that the photographs contain distortions. In addition, a proper foundation must be established before the photographs can be admitted at trial, and the defendants will have the opportunity to cross examine the investigator through whom the photographs are offered. This will provide the defendants with ample protection. For these reasons, I recommend that the motion to suppress the photographs be denied.[3]

2. The defendants have also moved to dismiss count IV of the information, which charges the defendants with the adulteration of the spice marjoram, on the ground

that the statute of limitations has run. The controlling statute, 18 U.S.C. § 3282 (1976), provides that the information must be instituted within five years after the offense is committed. The defendants claim that because the information states that the marjoram became adulterated in September, 1974 and the information was filed December 4, 1980, the statute of limitations has run. Count IV charges the defendants with a violation of 21 U.S.C. § 331(k) (Supp. II 1949) and 21 U.S.C. § 342(a)(4). These statutes prohibit the "holding" or "storing" of food under insanitary conditions whereby it may have become contaminated. Thus, as long as the information was drawn within a five year period after any time the marjoram was held for sale in an adulterated state, the statute of limitations does not preclude a prosecution. *United States v. Wiesenfeld Warehouse Co.*, 376 U.S. 86, 84 S.Ct. 559, 11 L.Ed.2d 536 (1964). Since the offense charged is within the time allowed by the statute of limitations, I recommend that the defendants' motion to dismiss Count IV be denied.[4]

3. Defendants also move to dismiss certain counts of the information on the ground that the information charges the same offense in more than one count and is, therefore, multiplicitous. The defendants assert that because there were four investigations of the Gel Spice premises, there should be only four counts in the information.

Neither the United States Supreme Court nor the Second Circuit has spoken directly on this issue. The Northern District of New York has held, however, that one unsanitary condition can lead to multiple convictions based on different foods. *United States v. J. Treffiletti & Sons*, 496 F.Supp. 53, 56 (N.D.N.Y.1980). Other circuits have reached similar results. *Akin Distributors v. United States*, 399 F.2d 306, 307 (5th Cir.1968), *cert. denied*, 394 U.S. 905,

---

2. See Defendants' Memorandum of Law filed August 5, 1981, Appendix; *(FDA) Inspection Operations Manual* ¶ 523.

3. See May 5, 1982 transcript at 23–25.

4. See May 5, 1982 transcript at 49–50.

89 S.Ct. 1013, 22 L.Ed.2d 216 (1969); *United States v. H.B. Gregory Co.,* 502 F.2d 700 (7th Cir.1974), *cert. denied,* 422 U.S. 1007, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975). In addition, although the multiplicity of counts was not an issue, the Supreme Court reversed the trial court's dismissal of a similar information in *United States v. Wiesenfeld Warehouse Co.,* 376 U.S. at 87 n. 3, 84 S.Ct. at 561 n. 3. The general test for whether two violations constitute the same or different offenses is whether each violation requires proof of an additional fact that the other does not. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

The ten counts in this case involve different foods, labeled differently, manufactured in different countries and shipped to the defendants on different dates. Clearly, the possibility exists that each count requires proof of additional facts. For these reasons, I recommend that the defendants' motion to strike various counts of the information be denied.[5]

4. The defendants also move to suppress all of the evidence obtained during the investigation because the investigations were conducted without a warrant. The warrantless inspection was authorized by 21 U.S.C. § 374, which provides that upon presenting credentials and a written notice to the owner, FDA agents can enter and inspect warehouses at reasonable times and within reasonable limits. Before all of the inspections, the inspectors presented their credentials and issued a notice of inspection (Hile Affidavit ¶ 19). I find that the inspections were clearly at reasonable times and within reasonable limits.

Further, there is no authority that would indicate that 21 U.S.C. § 374 is unconstitutional. Rather, the Supreme Court has held that public interest justifies warrantless inspections in closely or pervasively regulated industries. *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32

L.Ed.2d 87 (1972) (warrantless inspections of firearms); *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (warrantless inspections of liquor). In *Marshall v. Barlow's Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the court held warrantless OSHA inspections to be unconstitutional, but expressly recognized the *Biswell-Colonnade* exception and noted that industries other than liquor and firearms may be within the exception. *Id.* at 313, 98 S.Ct. at 1821.[6]

Public interest is deeply involved in the food industry. Undetected violations could adversely affect public health and well-being. Given the pervasive nature of the federal regulation of the food and drug industry, in contrast to the situation in *Barlow's,* warrantless inspections pursuant to § 374 are fully consistent with the fourth amendment. *United States v. New England Grocers Supply Co.,* 488 F.Supp. 230, 238 (D.Mass.1980). *See also United States v. Jamieson-McKames Pharmaceuticals,* 651 F.2d 532 (8th Cir.1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982); *cf. United States v. Gordon,* 655 F.2d 478, 482–84 (2d Cir.1981) (warrantless search pursuant to New York State Insurance Law did not violate the fourth amendment). Since a warrant was not necessary to conduct the inspections of the Gel Spice warehouse, I recommend that defendants' motion to suppress the evidence gathered therefrom be denied.[7]

### GOOD FAITH ON THE PART OF THE FDA

5. The remainder of defendants' motions are dependent upon the determination of whether the investigations occurred in furtherance of a criminal investigation rather than for administrative purposes. A finding must be made, therefore, as to when the institutional decision was made to prosecute the defendants. The FDA, in its

5. See May 5, 1982 transcript at 69.

6. The mining industry is one that comes within the *Biswell-Colonnade* exception. *Donovan v. Dewey,* 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d

262 (1981) (warrantless inspection of mine did not violate the fourth amendment).

7. See May 5, 1982 transcript, at 16–17.

own affidavit, asserts that in February, 1977 the New York District forwarded a prosecution recommendation to the Bureau of Foods. The Bureau of Foods concurred, and forwarded the recommendation to the Office of the Commissioner of the FDA, who then forwarded the recommendation to the FDA's Office of General Counsel (Hile Affidavit ¶ 13). On September 18, 1978, the FDA Chief Counsel referred the agency's request for prosecution of Gel Spice to the United States Department of Justice, Office of the United States Attorney, Eastern District of New York. According to the Government the referral constituted the agency's first formal institutional decision to prosecute. (Hile Affidavit ¶ 15). Defendants, on the other hand, contend that the decision to prosecute them occurred much earlier, if not as early as 1972.[8] If this were true, one could question whether or not subsequent inspections were conducted for regulatory purposes or as evidence-gathering forays.

At the May 5, 1982 conference I indicated that it might be necessary to take testimony on the issue of the FDA's good faith with regard to the various inspections.[9]

On June 29, 1982 I reviewed *in camera* the cover sheets which were prepared by FDA investigators and which accompanied the official reports of their inspections, as well as other internal memoranda. The purpose of such review was to determine not only the relevance of those documents to the issue of the government's good faith but also whether or not said documents were privileged.[10] A second conference was held later that day with counsel for both sides present; both meetings were recorded.

After reviewing the documents in the presence of FDA counsel and personnel, the undersigned made a tentative determination that the decision to prosecute the defendants was made on September 18, 1978.[11] Such a finding would preclude a

claim of bad faith on the FDA's part with regard to the 1976 and 1977 inspections. However, I reserved decision with respect to the 1979 inspection and asked counsel to brief the following points:

(a) Assuming the January, 1979 inspection was conducted in accordance with a bona fide administrative scheme, must the evidence obtained therefrom be suppressed for all purposes and/or should counts 8, 9 and 10 be severed or dismissed because of the prior decision to prosecute the defendants.

(b) Did the *in camera* review of the FDA documents deny defendants a confrontation of the evidence to be used against them, thereby requiring that they be given access to the documents reviewed.

After consideration of the memoranda and exhibits submitted by the parties subsequent to the June 29, 1982 conferences, the undersigned hereby withdraws his tentative determination that September 18, 1978 was the date on which the FDA first decided to institute a criminal prosecution of the defendants. Rather, the date of the commitment to prosecute together with the issue of the FDA's good faith in the conduct of its inspections, will be among the matters to be resolved at an evidentiary hearing to be held at 10:00 A.M. on January 4, 1983 as originally discussed on May 5, 1982. This hearing will give the defendants an opportunity to question FDA witnesses but defendants will not gain access to the documents submitted by the FDA under seal for the reasons outlined below.

A regulatory agency is empowered to investigate the possible violation of the laws it enforces through the use of administrative process provided that its inquiries are for a proper purpose, the information sought is relevant to that purpose and the statutory procedures are observed. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964).

---

8. See Defendants' Memorandum of Law filed October 19, 1982 at 6.

9. See May 5, 1982 transcript at 4, 6 and 13.

10. See May 5, 1982 transcript at 88–90, 98–99.

11. See June 29, 1982 transcript at 4–5.

Once the agency has established the above, the burden shifts to the one alleging bad faith on the agency's part to come forward with evidence of such bad faith. *See United ed States v. O'Henry's Film Works*, 598 F.2d 313, 320 (2d Cir.1979).

At the May 5th meeting the undersigned made a determination that the defendants had the burden of coming forward with evidence of the FDA's bad faith in the conduct of its regulatory inspections.[12]

Bad faith exists where a regulatory agency employs administrative procedures solely for a criminal purpose. *United States v. LaSalle National Bank*, 437 U.S. 298, 316–17, 98 S.Ct. 2357, 2367–68, 57 L.Ed.2d 221 (1978); *Securities and Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368, 1387 (D.C.Cir.1980) (en banc), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); *United States v. Schutterle*, 586 F.2d 1201, 1203 (8th Cir. 1978). In order to secure an evidentiary hearing and/or discovery of the FDA documents, the defendant must make a substantial preliminary showing of bad faith. *United States v. O'Henry's Film Works*, 598 F.2d at 320; *United States v. Morgan Guaranty Trust Company*, 572 F.2d 36, 43 n. 9 (2d Cir.), *cert. denied sub nom. Keech v. United States*, 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978); *United States v. Morgan Guaranty Trust Co.*, 524 F.Supp. 24, 27 (S.D.N.Y.1981). Further, defendants "bear the burden to disprove the actual existence of a valid civil ... purpose ..." *LaSalle*, 437 U.S. at 316, 98 S.Ct. at 2367. However, an evidentiary hearing is not required in the absence of a meaningful and substantial factual showing of an improper purpose by the investigative agency. *Securities and Exchange Commission v. Howatt*, 525 F.2d 226, 229 (1st Cir.1975).

After careful consideration the undersigned will permit the defendants to explore the issue of the FDA's good faith in order to resolve the following questions. *See Securities and Exchange Commission v. Knopfler*, 658 F.2d 25, 26 (2d Cir.1981), *cert. denied sub nom. Sprecher v. Securities and Exchange Commission*, 455 U.S. 908, 102 S.Ct. 1255, 71 L.Ed.2d 446 (1982) (evidentiary hearing within trial court's discretion). First, the Hile Affidavit of May 15, 1981 does not adequately explain the delay between the February, 1977 prosecution recommendation by the New York District Office and the September 18, 1978 referral to the United States Attorney. *See LaSalle*, 437 U.S. at 316–317, 98 S.Ct. at 2367–2368. A second prosecution recommendation was made on July 17, 1979 which was referred to the United States Attorney on November 21, 1979 (Hile Affidavit ¶ 18).[13]

Furthermore, the Hile Affidavit is ambiguous with respect to the February, 1973 prosecution recommendation (Hile Affidavit ¶ 10). It is unclear whether that recommendation was withdrawn or just held in abeyance as some of the subsequent Establishment Inspection Reports (EIR) seem to indicate.[14]

The issue of the FDA's bad faith is inextricably entwined with the date on which the FDA decided to prosecute the defendant. In *LaSalle* the date of referral by the Internal Revenue Service (IRS) to the Department of Justice constituted the initiation of the criminal prosecution.[15] 437 U.S. at 311, 98 S.Ct. at 2365; *see also United States v. Schutterle*, 586 F.2d at 1203 nn. 4 and 5. The prosecution contends that the same rule should be applied in the instant action, i.e. September 18, 1978 and November 21, 1979 are the dates on which the FDA first decided to prosecute the defend-

---

**12.** See May 5, 1982 transcript at 11.

**13.** It should be noted that more than four years elapsed from the time of the first inspection in July, 1976, and the filing of an information against defendants on December 4, 1980.

**14.** See July, 1976 EIR.

**15.** It appears that the multilayered review process undertaken by the IRS in *LaSalle* before recommending prosecution to the Department of Justice is very similar to that described in the Hile Affidavit at ¶ 6. See *LaSalle*, 437 U.S. at 315, 98 S.Ct. at 2366.

ants on Counts 1–7 and Counts 8–10, respectively. However, an agency may not delay referral to the DOJ for the purpose of gathering evidence for the subsequent criminal prosecution. *LaSalle,* 437 U.S. at 316–317, 98 S.Ct. at 2367–2368.

Should the FDA establish that the inspections were valid regulatory actions and conducted in good faith prior to a decision to prosecute the defendants, the evidence derived from those inspections should not be suppressed. In *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970), the Supreme Court expressly authorized the FDA to proceed concurrently with civil and criminal actions when it refused to suppress civil interrogatories in a subsequent prosecution of the same case. *Kordel* recognized the need to investigate criminal as well as civil claims in order to protect the public interest and approved parallel investigations by a regulatory agency. *Id.* at 11, 90 S.Ct. at 769. The FDA regulatory inspections were proper unless it is established that the purpose was solely for investigatory, and not regulatory, purposes. *See United States v. Shaefer, Michael and Clairton Slag, Inc.,* 637 F.2d 200, 204 (3rd Cir.1980).

### COUNTS 8, 9 AND 10 OF THE INFORMATION

6. Regardless of the date which is established as the point in time when the FDA was committed to prosecute the defendants on Counts 1–7 such date would be prior to the January, 1979 inspection.

If the FDA establishes that the January, 1979 inspection was part of a valid administrative scheme of enforcement of the Federal Food, Drug and Cosmetic Act, the undersigned sees no reason to dismiss those counts of the information resulting from that inspection, i.e., Counts 8, 9 and 10. If part of a valid work plan, such inspection would have been for regulatory purposes and not for use in the seven

counts already referred to the Department of Justice.

Counts 8, 9 and 10 are based on a separate and distinct inspection which revealed unsanitary conditions that existed in January, 1979 and which resulted in *additional* violations of the Food, Drug and Cosmetic Act.

It is absurd to expect that, once the FDA recommends criminal prosecution based on violations it has already uncovered, it can no longer carry out its regulatory duties. If the defendants are to be prosecuted on Counts 8, 9 and 10, such prosecution would be for conditions extant in 1979, not conditions that existed in July, 1976, March-April, 1977 or July, 1977.

In order to suppress the evidence from the 1979 inspection, it would have to be established that the FDA conducted that inspection solely for the purpose of gathering evidence to support its prior recommendation to the Department of Justice. *See LaSalle,* 437 U.S. at 316–17, 98 S.Ct. at 2367–68; *Abel v. United States,* 362 U.S. 217, 226, 230, 80 S.Ct. 683, 690, 692, 4 L.Ed.2d 668 (1960).

### ACCESS TO FDA RECORDS

7. (a) In exploring the issue of the FDA's bad faith the defendant will not have the benefit of the documents submitted under seal by the FDA. *See LaSalle,* 437 U.S. at 304 n. 5, 98 S.Ct. at 2361 n. 5 (court reviewed IRS investigative files *in camera* ).[16] The documents in question include internal agency memoranda as well as notes made by investigators after inspections of the Gel Spice premises. These documents closely parallel those records already provided to defendants in discovery proceedings, i.e., Establishment Inspection Reports of the various Gel Spice investigations. After careful consideration of both sets of documents, the undersigned recommends that they not be disclosed to the

---

**16.** Defendants claim that the documents are material to the preparation of their defense pursuant to Fed.R.Crim.P. 16(a)(1)(C). The Government resists disclosure under Fed.R.Crim.P. 16(a)(2) claiming that they are "reports, memo-

randa (and) other internal documents made by ... government agents in connection with the investigation or prosecution of the case...." *Id.*

defendants because they are cumulative in many respects. Further, the only additional material consists of analyses, opinions and recommendations by FDA employees which are not subject to disclosure under Fed.R.Crim.P. 16(a)(1)(C) since they were made during the investigation of the case. *See* Fed.R.Crim.P. 16(a)(2).

(b) In support of their petition for disclosure of the FDA internal records defendants cite *United States v. Berrios*, 501 F.2d 1207 (2d Cir.1974), which affirmed the trial court's discretion after an *in camera* review to require production of materials relevant and probative to the defenses raised, even though the documents ordinarily would be exempt from disclosure under Fed.R.Crim.P. 16(a)(2). The test for disclosure of such exempt material is the "relevancy of the evidence to the specific defense for which it is sought..." *Id.* at 1212.

In *Berrios* the Second Circuit indicated that it would not have even ordered the government to produce the memorandum in question because (1) the defendant failed to make an adequate preliminary showing of relevancy and (2) defendant seemed to be embarking on a "fishing expedition." *Id.* at 1211.

Having reviewed the documents in question,[17] the undersigned is of the opinion that they are not demonstrably relevant to the defendants' position, i.e., they would not tend to establish the elements of their defenses. *Id.* at 1212. Rather, the records sought would only serve to buttress the FDA's claims. The records already provided by the FDA contain sufficient information to enable the defendants to conduct a meaningful inquiry of FDA practices and procedures at the evidentiary hearing; there is no need to disclose internal FDA files.

(c) In further support of their request to gain access to the FDA internal records defendants cite *United States v. Saffaie, et al.*, Cr. No. 82–371–RPA (N.D.Cal.1982), in which an indictment was dismissed by the trial court because the government refused to comply with its discovery order.

*Saffaie* can be distinguished from the instant case because the Government has, in fact, surrendered the documents to the undersigned who has reviewed them and concluded that they are either cumulative or not relevant to the defendants' position.

(d) Finally, the undersigned rejects defendants' claim that the documents they seek constitute *Brady* material since they are not exculpatory; the records reviewed do not go to the guilt or punishment of the defendants which is the standard for disclosure under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). The FDA has acknowledged its *Brady* obligation and there is no reason to doubt it will not honor that obligation. The FDA has fully complied with all discovery requests to date, save for the documents submitted under seal.

Non-Brady material is obtainable pursuant only to Fed.R.Crim.P. 16. *United States v. Kaplan*, 554 F.2d 577, 579–80 (3rd Cir.1977). Since I have already determined that the records are exempt from disclosure under Rule 16, they will not be turned over to the defendants at this time.

Should the preparer of any record testify at the hearing mandated by this report this testimony will not compel an examination of such record as the testimony would not be *trial* testimony. *See* 18 U.S.C. § 3500(a).

The Government is directed to prepare an index of the documents it has submitted for inspection by the undersigned and is to serve that index on defendants within ten days of the receipt of this report. This index is to identify the preparer of each document to facilitate the defendants' identification of potential witnesses.

### PREJUDICE TO DEFENDANTS

8. Defendants claim that they were prejudiced by the June 29, 1982 *in camera*

---

**17.** Unlike *Berrios* where the trial court did not review the memorandum prior to its order to produce the document since the government refused to deliver it to the Court.

review because FDA counsel and personnel were present. The purpose of the review was not to take *ex parte* testimony or to hear argument on the facts in issue.[18] Rather, FDA counsel and personnel were present only to answer any questions raised by the undersigned during the review.

Fed.R.Crim.P. 16(d)(1) permits a party to make an *ex parte* showing when seeking a protective order. It does not prohibit the presence of the party. The adversary's rights are protected by the fact that the text of the party's statement must be preserved in the event of an appeal. The June 29, 1982 *in camera* review was transcribed; further, the affidavit and documents submitted are still within the court's possession.

Additionally, in order to avoid any claim of prejudice to the defendants, the undersigned will not rely on any of the documents reviewed *in camera* on June 29, 1982 as the basis for findings to be made at the January 4, 1983 evidentiary hearing.

### SUBPOENA DUCES TECUM

9 and 10. With regard to the defendants' motion to quash the subpoena *duces tecum* (9) served upon defendant Gel Spice, Inc. by the FDA on July 10, 1981 for the production of records relating to the shipment and importation of certain foods, I am withholding my recommendation pending testimony by defendants Barry Engel and Andre S. Engel. This issue is directly related to the question of whether or not the interstate records were voluntarily surrendered by the defendants to FDA investigators (10) such matter being one of the issues reserved at the May 5, 1982 meeting for an evidentiary hearing.

Defendants resist production of the documents on the following grounds: (a) the documents constitute evidence of interstate commerce within the meaning of 21 U.S.C. § 373 (1946) and, thus, cannot be used in criminal prosecution against one who has supplied them; and (b) the records are cur-

rently the subject of a motion to suppress on the ground that they were not provided voluntarily by the defendants, Barry Engel and Andre S. Engel.

Although 21 U.S.C. § 373 was part of the original 1938 Federal Food, Drug and Cosmetic Act, there is very little case law dealing with this section. The section provides immunity in a criminal prosecution to one who has permitted FDA personnel to inspect records of interstate shipments after (a) the FDA has requested the records, (b) the custodian has refused to provide them and (c) the investigator has again requested the records specifically under the authority of 21 U.S.C. § 373 and has presented a written statement as required by that section. *United States v. Lyon Drug Co.*, 122 F.Supp. 597, 601 ( E.D.Wisc. 1954); *United States v. Scientific Aids Co.*, 117 F.Supp. 588, 589 (D.N.J.1954); *United States v. Arnold's Pharmacy, Inc.*, 116 F.Supp. 310, 314 (D.N.J.1953). If the custodian has shown the documents to FDA investigators voluntarily, § 373 does not apply and one is not entitled to its immunity. *United States v. Herold*, 136 F.Supp. 15, 16 (E.D.N.Y.1955); *United States v. Lyon Drug Co.*, 122 F.Supp. at 599–601. The question of voluntariness remains to be resolved at the evidentiary hearing and will determine whether or not the plaintiff can use the interstate records against the defendants in this criminal prosecution. *See United States v. Herold*, 136 F.Supp. at 16.

In support of its subpoena to obtain the interstate records the FDA contends that the immunity provided by § 373 is not available to the defendants because they are not carriers and cites the following legislative history:

Carriers are required to make, available for copying, records showing interstate shipments of suspected articles so that Federal jurisdiction can be established. * * *

Section 703 [21 U.S.C. § 373] requires interstate carriers and receivers to permit access to and the copying of all nec-

18. See May 5, 1982 transcript at 126.

essary records to show interstate shipment and thus establish Federal jurisdiction. This provision is necessary since some warehousemen and trucking concerns and even some railroads have refused to permit the copying of records which were essential to the institution of proceedings to control abuses of consumer health and welfare. The absence of such provision in the present law has been a definite handicap to its enforcement. * * * H.R.Rep. No. 2139 75th Cong.3d Sess. pps. 2, 12 (1938). *See also United States v. Arnold's Pharmacy, Inc.,* 116 F.Supp. at 314; *United States v. Lyon Drug Co.,* 122 F.Supp. at 600–01. However, the language of § 373 itself refers to "carriers engaged in interstate commerce and persons receiving food ... in interstate commerce or holding such articles so received..." 21 U.S.C. § 373. The term "person," as defined in the Federal Food, Drug and Cosmetic Act, includes an individual partnership, corporation or association and, therefore, would apply to the defendant Gel Spice, Inc. *See* 21 U.S.C. § 321(e).

Although § 373 may have been enacted primarily to force carriers to permit FDA inspectors to gain access to their records of interstate shipment, a literal reading of the statute persuades me that the defendant Gel Spice is within the class of persons entitled to invoke the § 373 immunity.

Not only must carriers engaged in interstate commerce permit FDA inspectors to copy interstate records but "persons receiving food ... in interstate commerce or holding such articles so received ..." must also grant the FDA access. 21 U.S.C. § 373. Further, "it shall be unlawful for any such carrier or person to fail to permit such access ... when such request is ... in writing....." *Id.* However, "evidence obtained under this section ... shall not be used in a criminal prosecution of the person from whom obtained." *Id.*

The only case within this district that has considered § 373 is *United States v. Herold, supra,* which stated that "evidence obtained pursuant to § 373 shall not be used in a criminal prosecution of the person from whom it is obtained." *Id.* at 16. *See also United States v. 75 Cases,* 146 F.2d 124, 127–28 (4th Cir.1944); *United States v. Arnold's Pharmacy,* 116 F.Supp. at 313–14; *United States v. Maryland Baking Co.,* 81 F.Supp. 560, 562 (N.D.Ga.1948).

None of the cases cited previously reached the issue of whether or not the defendant was within the class of persons entitled to invoke § 373 immunity. Rather, in each case the court found that since the interstate records were shown voluntarily to the FDA inspectors, § 373 did not apply. *See United States v. Lyon Drug Co.,* 122 F.Supp. at 600; *United States v. Scientific Aids Co.,* 117 F.Supp. at 589; *United States v. Arnold's Pharmacy,* 116 F.Supp. at 315. In *United States v. Herold,* although the government presented strong evidence that the defendants had consented and even cooperated in the copying of the interstate records, the Court granted the defendants a hearing on the question of voluntariness. *Id.* at 16.

In conclusion, in order to suppress the interstate records defendants must demonstrate at the hearing that they initially refused access to the FDA investigators and only permitted the investigators to inspect the records after a written request was made pursuant to § 373. Should the defendants fail to sustain their burden, the records will not be suppressed since company records are subject to production pursuant to a lawful subpoena. Fed.R.Crim.P. 17(c). As a corporate defendant Gel Spice is not entitled to claim the protection of the fifth amendment. *Wilson v. United States,* 221 U.S. 361, 382–84, 31 S.Ct. 538, 545–46, 55 L.Ed. 771 (1911); Wright, *Federal Practice and Procedure* § 274 (2d ed. 1982). The individual defendants cannot rely on the fifth amendment privilege to avoid production of the records of a collective entity which are in their possession in a representative capacity, even if those records might incriminate them. *Bellis v. United States,* 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974).

A custodian of corporate records held in a representative capacity may be required not only to produce records in his custody but also to testify regarding those records. *United States v. J. Tirocchi & Sons,* 187 F.Supp. 785, 787 (D.R.I.1960). The production of corporate record may be obtained even in situations where the corporation is closely held or the "alter ego" of the owner. *United States v. Fago,* 319 F.2d 791, 793 (2d Cir.1963).

Other issues to be addressed at the evidentiary hearing include (11) whether statements made by the defendants during the various investigations should be suppressed because they were coerced[19] and (12) whether statements made at the section 305 hearings pursuant to 21 U.S.C. § 335 should be suppressed.[20] Since the FDA has already provided the defendants with samples pursuant to 21 U.S.C. § 372, the only outstanding discovery matter is the production of 16(b) material by the defendants (13). (See accompanying order).

Whereas defendants have pending various motions to dismiss this prosecution and to suppress evidence, these matters having been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B), and having reviewed the papers submitted and heard argument of both counsel at hearings on May 5, 1982 and June 29, 1982, I make the following findings and recommendations:

1. Concerning defendants' motion to suppress the photographs taken in the course of the various inspections, I recommend that defendants' motion on this issue be denied, with defendants having the right to raise the issue of undue prejudice at trial.

2. Concerning defendants' motion to dismiss Count IV on the ground that it is barred by the statute of limitations, I recommend that defendants' motion to dismiss be denied.

3. Concerning defendants' motion to dismiss certain counts of the Information on the ground that they are multiplicitous, I recommend that defendants' motion be denied.

4. Concerning defendants' motion to suppress evidence on the ground that warrantless inspections were conducted in violation of defendants' fourth amendment rights, I recommend that defendants' motion on this issue be denied.

5. Concerning defendants' motion to dismiss or suppress evidence on the ground that the government obtained evidence in bad faith, i.e., inspections were conducted to gather evidence for a pre-determined criminal prosecution, this matter will be resolved based on findings to be made at the January 4, 1983 evidentiary hearing.

6. Concerning defendants' motion that Counts 8, 9 and 10 of the Information be dismissed, this issue is partially dependent upon whether or not the January, 1979 inspection was conducted in good faith, which matters will be determined at the evidentiary hearing, together with the date on which the FDA first decided to prosecute the defendants as a result of this inspection. Should it be established that the investigation was bona fide, I recommend that defendants' motion to suppress the evidence and to dismiss counts 8, 9 and 10 be denied.

7. Concerning defendants' motion that they are entitled to internal FDA files (a) pursuant to Fed.R.Crim.P. 16(a)(1)(C) because they are material to the preparation of the defendants' defense and (b) the documents constitute *Brady* material, I recommend that defendants' motion on this issue be denied. I direct that the government provide defendants with an index of these documents identifying the preparers of the documents within ten days of its receipt of this report.

8. Concerning defendants' claim that they were prejudiced by the June 29, 1982 *in camera* review and denied the opportunity to confront the evidence against them, I find that the defendants were not prejudiced by the procedure, in light of the fact

**19.** See May 5, 1982 transcript at 26.

**20.** *Id.* at 35–39.

that the undersigned will rely on none of the documents reviewed as the basis for any determination made at the evidentiary hearing, nor were the defendants denied an opportunity to confront the evidence against them since they are already in possession of the necessary documents.

9 and 10. Concerning defendants' motion to quash the subpoena of Gel Spice corporate records regarding interstate shipments (9) and defendants' motion to suppress interstate shipping documents under 21 U.S.C. § 373 with regard to the defendants Barry Engel and Andre S. Engel (10), I am reserving decision on these matters pending testimony at the evidentiary hearing.

11. Concerning defendants' motion to suppress statements made by Barry Engel and Andre S. Engel during the various investigations on the ground that they were coerced, I am withholding my recommendation pending testimony at the evidentiary hearing.

12. Concerning defendants' motion to suppress statements made in the course of hearings conducted pursuant to 21 U.S.C. § 335, this matter has been reserved pending testimony at the evidentiary hearing.

13. Concerning defendants' requests for discovery as set forth in their letters of February 20, 1981 and April 2, 1982, I find that all of the listed items have been supplied by the Government. The only outstanding matter is the production of 16(b) material by the defendants which material shall be produced in accordance with the accompanying order of this date.

The time within which objections may be filed to the findings and conclusions contained herein will begin to run at such time as I render my final report after the conclusion of the hearing ordered in this report. To insure that the record accurately reflects certain prior decisions by this Court, pursuant to 28 U.S.C. § 636 the following discovery orders were made at the hearings on May 5, 1982, and June 29, 1982:

1. The government was ordered to:

a. Supply a bill of particulars by May 31, 1982, which will state (in generic terms with incorporation by reference of discovery materials provided to defendants) the acts which the government contends were done by Barry Engel and Andre S. Engel to render the food alleged in each count of the Information to become adulterated.

b. List the names, addresses, and curricula vitae of all expert and FDA witnesses the government intends to call at trial.

2. Defendants were ordered by August 15, 1982, to furnish the government all material required by Rule 16(b) of the Federal Rules of Criminal Procedure.